PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTENERGY GENERATION, LLC, *et al.*, | ) ) ) | CASE NO. 5:19-CV-2413 |
| Plaintiffs, | ) ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) | |
| VALLEY FORGE INSURANCE COMPANY, | ) ) ) | **ORDER** [Resolving ECF Nos. 33 and 35] |
| Defendant. | ) ) | |

Pending are the parties' Motions for Summary Judgment. ECF Nos. 33 and 35. The

Motions have been fully briefed, and a hearing was held on August 3, 2020. For the reasons

explained below, Plaintiffs' Motion is granted and Defendant's Motion is denied.

## I. Introduction

Various FirstEnergy subsidiaries ("Plaintiffs") own and operate the Bruce Mansfield

Plant ("the Plant"), a coal-fired power plant in Shippingport, Pennsylvania. ECF No. 29 at

PageID #: 387. Plaintiffs entered into a Service Contract with Enerfab, Inc. ("Enerfab"), in

which Enerfab agreed to provide services to Plaintiffs at the Plant. *Id.*; *see also* ECF No. 32.

Four Enerfab employees were exposed to toxic hydrogen sulfide gas while working at the Plant

on August 30, 2017; two of them died and two were injured. ECF No. 33-1 at PageID #: 1125.

These employees and their families sued Plaintiffs in four different lawsuits related to the August

30, 2017 incident (the "underlying lawsuits"). ECF Nos. 29-3, 29-4, 29-5, and 29-6. The

(5:19-CV-2413)

plaintiffs in the underlying lawsuits (the "underlying plaintiffs") could not sue Enerfab in the

underlying lawsuits because of Pennsylvania's workers' compensation laws.  ECF No. 33-1 at

PageID #: 1130.

Enerfab had purchased an insurance policy ("the Policy") from Valley Forge Insurance

Company ("Defendant").  ECF No. 29 at PageID #: 386; *see also* ECF No. 29-1.  The Policy

covers not only the "Named Insured," *i.e.*, Enerfab, but also certain "Additional Insured" parties.

ECF No. 29-1 at PageID #: 467.  The Policy provides that it is "amended to add as an Insured any

person or organization whom the Named Insured is required by written contract to add as an

additional insured on this coverage part."  *Id.*  Plaintiffs' Service Contract with Enerfab requires

Enerfab to cover Plaintiffs as additional insured parties.  ECF No. 32 at PageID #: 1014; *see also*

ECF No. 29-10 at PageID #: 662.  Under the Policy, Defendant agreed to provide insurance to

Plaintiffs, as "Additional Insured" parties, for "liability for . . . bodily injury or property damage

caused in whole or in part by the acts or omissions by or on behalf of" Enerfab.  ECF No. 29-1 at

PageID #: 467.

Plaintiffs "tendered a demand to Enerfab for defense and indemnification with respect to

the Underlying Lawsuits" and Defendant, on behalf of Enerfab, denied coverage.  ECF No. 29 at

PageID #: 388; *see also* ECF No. 29-10.  In the letter denying coverage, Defendant indicated that

the Policy did not cover defense and indemnification for the underlying lawsuits because

Plaintiffs are "being sued for [their] sole or independent negligence and not due to the negligence

of Enerfab."  ECF No. 29-10 at PageID #: 662.  Plaintiffs and Defendant "have been unable to

resolve the dispute relating to coverage under the Policy" (ECF No. 29 at PageID #: 388); hence,

(5:19-CV-2413)

the instant case was filed.  Plaintiffs' Motion asks the Court to "enter partial summary judgment in their favor and declare that Defendant . . . is required to defend [Plaintiffs]" in the underlying lawsuits.  ECF No. 33 at PageID #: 1118.  Defendant's Cross-Motion asks the Court to do the opposite.  ECF No. 35.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992).

The instant Motions do not present a dispute regarding the facts.  Rather, the parties' Motions require an analysis of which "movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Napier v. Ickes*, 140 N.E.3d 137, 145 (Ohio Ct. App. 2019) (providing that the interpretation of an insurance policy "is a question of law for the court to decide").

3

(5:19-CV-2413)

## III. Discussion

As explained below, resolution of the pending Motions requires a choice of law analysis, the first step of which is to assess whether Pennsylvania and Ohio law conflict with respect to the instant issue. The Court finds that there is no conflict because Plaintiffs' Motion must be granted under either Pennsylvania or Ohio law. The Court therefore need not decide which state's law applies.

### A. Choice of Law Analysis

The insurance policy at issue does not contain a choice of law clause, and there is some dispute regarding whether the law of Ohio or Pennsylvania should control the Court's interpretation of the insurance policy language. *See, e.g.*, ECF No. 41 at PageID #: 1299. A federal court sitting in diversity jurisdiction applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 946 (1941); *Premium Freight Mgmt., LLC v. Engineered Sols., Inc.*, 906 F.3d 403, 406 (6th Cir. 2018). This means the Court should apply Ohio's choice of law rules to determine which state's law applies to the substantive dispute presented by the parties' Motions. Ohio "has adopted the two-step approach set forth in the Restatement (Second) of Conflict of Laws." *Premium Freight Mgmt.*, 906 F.3d at 406; *see also Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206 (Ohio 2001). "The first step is to determine if there is an actual conflict between the substantive laws of the states involved. . . . Only if they conflict must we proceed to the second step to choose between them." *Premium Freight Mgmt.*, 906 F.3d at 406-07 (citation omitted); *see also Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (Ohio 2006).

4

(5:19-CV-2413)

Defendant argues that "[b]ecause Ohio and Pennsylvania have different approaches when interpreting additional insured coverage, there is a conflict between their laws." ECF No. 41 at PageID #: 1302.  The two states may have generally different "approaches," but Ohio courts analyze the existence of conflicts between the laws of different states at a more granular level. *Glidden Co.*, 861 N.E. 2d at 115-16.  For example, in *Glidden Co.*, in deciding between New York and Ohio law, the Ohio Supreme Court found that because there were "no cases directly on point as to whether New York would require insurance coverage to follow by operation of law in the instant circumstances," but an Ohio case was "directly on point . . . and without conflict under New York law," there was "no conflict between Ohio and New York law." *Id.*

The specific insurance policy language at issue in this case has already been interpreted under Pennsylvania law. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 676 (3d Cir. 2016) (holding that, under Pennsylvania law, insurer owed a duty to defend an "additional insured" who had been sued in underlying litigation for "factual allegations that potentially would support a conclusion that [the underlying plaintiffs'] injuries were 'caused, in whole or in part,' by [named insured's] acts or omissions").  There is, therefore, only a conflict between Ohio and Pennsylvania law if Ohio courts have interpreted the specific policy language at issue in this case differently.  That means that the first step in the choice of law analysis is to analyze this case under Ohio insurance law.

As explained below, the Court finds that Defendant owes Plaintiffs a duty to defend under Ohio law.  Because Defendant would also owe Plaintiffs a duty to defend under

(5:19-CV-2413)

Pennsylvania law,[1] there is no conflict between Ohio and Pennsylvania law.  Given the absence

of a conflict, the Court need not proceed to the second step of the choice of law analysis.

Plaintiffs' Motion must be granted under either Pennsylvania or Ohio law, so choosing between

the two is unnecessary.

### B.  Interpretation under Ohio Law

Ohio courts have not yet provided an interpretation of the specific policy language at

issue here, which requires Defendant to insure Plaintiffs for liability "caused in whole or in part

by the acts or omissions by or on behalf of" Enerfab, the named insured under the policy.  ECF

No. 29-1 at PageID #: 467.  Ohio law does supply helpful general guidance related to whether an

insurer owes an insured a duty to defend in an underlying suit against the insured.  The Ohio

Supreme Court has provided that "[a]n insurer's duty to defend is broader than and distinct from

its duty to indemnify."  *Sharonville v. American Emps. Ins. Co.*, 846 N.E.2d 833, 837 (Ohio

2006).  The Ohio Supreme Court has also held that when the allegations in the underlying

complaint "state a claim which is potentially or arguably within the policy coverage, or there is

some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the

insurer must accept defense of the claim."  *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459

N.E.2d 555, 558 (Ohio 1984).  Additionally, "[o]nce an insurer must defend one claim within a

---

[1] *See id.*  As explained below, the factual allegations in the underlying complaints
at issue in this case potentially would support a conclusion that the underlying plaintiffs'
injuries were caused in whole or in part by Enerfab's acts or omissions.  Additionally,
Plaintiffs contend, and Defendant does not dispute, that Defendant would owe Plaintiffs a
duty to defend under Pennsylvania law.  ECF No. 39 at PageID #: 1261.

(5:19-CV-2413)

complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *Sharonville*, 846 N.E.2d at 837.  The question is therefore whether Defendant (even "arguably") insures Plaintiffs against the type of liability Plaintiffs face in the underlying lawsuits.  If so, Defendant must defend Plaintiff in those lawsuits.

In a similar case in this District—one that also involved a plaintiff's assertion that the defendant insurer owed plaintiff a duty to defend in an underlying lawsuit per an additional insured policy—a colleague provided a helpful framework for approaching the issues in this type of case.  *Fortney & Weygandt, Inc. v. Am. Mfr.'s Mut. Ins. Co.*, No. 1:04-CV-48, 2012 WL 13020177, at *5 (N.D. Ohio Aug. 30, 2012).  *Fortney* conveys, "the court conducts the following two-step analysis to decide whether [Defendant has] a duty to defend: (1) determine the scope of the insurance policy; and (2) assess whether the allegations fall within the scope of that policy." *Id.*  With this structure as a guide, the Court proceeds to analyze this case under Ohio law.

## 1. The Scope of the Additional Insured Provision

Ohio law holds that the interpretation of an insurance policy "is a question of law for the court to decide." *Napier v. Ickes*, 140 N.E.3d 137, 145 (Ohio Ct. App. 2019).  The Court is to "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Id.*  The Court's goal is to effectuate the intent of the parties to the agreement, and "[w]hen the language of a [policy] is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* (citation omitted).  General principles of contract interpretation in Ohio law dictate that "[i]f

7

(5:19-CV-2413)

provisions are susceptible of more than on interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Sharonville*, 846 N.E.2d at 836 (citation omitted).

Defendant argues that the Court should construe the language at issue—Defendant's promise to insure Plaintiffs against liability "caused in whole or in part" by Enerfab—to mean that Plaintiffs are only insured against vicarious liability that is derivative of Enerfab's liability. ECF No. 41 at PageID #: 1299.  The Court acknowledges that Ohio courts have construed many additional insured provisions so narrowly.  *See, e.g.*, *Davis v. LTV Steel Co., Inc.*, 716 N.E.2d 766, 737 (Ohio Ct. App. 1998) ("The phrase 'arising out of your operations' in the endorsement was intended to protect . . . the additional insured . . . from being vicariously liable for the tortious acts of the named insured.").  As noted above, however, Ohio courts have yet to construe the specific language at issue here—"caused in whole or in part."  And, as many courts around the country have found, it's not logically consistent to conclude that coverage for liability "caused in whole or in part" means that coverage is limited to vicarious liability, because a directly liable party cannot cause a vicariously liable party to be derivatively liable only "in part." *See* ECF No. 39 at PageID #: 1251-52 (collecting cases).

The parties have cited only two cases that apply Ohio law to the language that is actually at issue in this case: one from this District, *F & M Mafco, Inc. v. Travelers Indem. Co.*, No. 1:09-CV-355, 2009 WL 10688947, at *1 (N.D. Ohio Dec. 8, 2009), and one from the Western District of Pennsylvania, *Greenwich Ins. Co. v. BBU Servs., Inc.*, No. 12-CV-291, 2014 WL 7344060, at *1 (W.D. Pa. Dec. 23, 2014).  Both are helpful but neither is directly on point.  *Mafco* held that

(5:19-CV-2413)

an insurer does not owe an additional insured a duty to defend when "the complaint [in the underlying lawsuit] and subsequent events fail to demonstrate that [underlying plaintiff] incurred injuries arguably caused in whole or in part by [the named insured]." *F & M Mafco*, 2009 WL 10688947 at *4. *Mafco* was therefore decided on grounds that, in our framework, are part of the second step of the analysis—whether the allegations fall within the scope of the policy.  It did not squarely address the first-step question—the scope of the policy.  It did not have to, because there was no way that the allegations in the underlying complaint in that case, *i.e.*, the allegation that the additional insured was *purely* directly negligent, could have been caused in "whole or in part" by the named insured, and thus there was no duty to defend in that case under any interpretation of the policy's scope.

In *BBU,* although the question was teed up slightly differently than it is in the instant case, the court dealt more directly with the scope of the policy created by the "in whole or in part" language.  *BBU*, 2014 WL 7344060, at *3-7.  After noting that the "cases cited in the parties' briefs are unsatisfying, and the Court's independent research has failed to uncover Ohio caselaw addressing the issue," the Court in *BBU* turned to "persuasive authority," including the *Ramara* case—the one decided under Pennsylvania law (only the district court opinion was available at that point)—and a treatise.  *Id.*  The Court ultimately decided, consistent with *Ramara*, that the defendant-insurer owed the plaintiff-additional insured a duty to defend, even though the underlying plaintiffs were not solely seeking to hold the additional insured vicariously liable.  *Id.* at *6.  Indeed, in *BBU*, as in our case, Pennsylvania's workers' compensation statute prevented the underlying plaintiffs from adding the named insured as a defendant in the

9

(5:19-CV-2413)

underlying lawsuit.  *Id.* at *1.  Therefore, *BBU* suggests that the identical policy language at issue in the instant case should not be construed as narrowly as Defendant suggests.

Finally, the Court takes judicial notice of the fact that the language at issue is boilerplate that is used in countless additional insured provisions.  *See* Kevin M. Young, et al., *Ohio Insurance Coverage—Baldwin's Ohio Handbook § 7.4: Additional Insureds (2020)*.  It is an update from earlier boilerplate language that covered additional insured parties for liability "arising out of" the named insured's conduct.  *Id.*  It is not the only update; another boilerplate option is coverage for additional insured parties "limited solely to the additional insured's 'vicarious liability' that is a specific and direct result of [the named insured's] conduct."  *Id.*  In other words, Defendant could easily have included policy language specifically limiting coverage to vicarious liability, but they did not.  This indicates that the Court would be giving Defendant more than they bargained for, and depriving Plaintiffs of coverage that they did bargain for, if the Court were to adopt Defendant's interpretation.

Because Defendant agreed to insure Plaintiffs for liability "caused in whole or in part" by Enerfab, the Court construes the policy according to the "plain and ordinary meaning of [the] language used in the policy," *Napier*, 140 N.E.3d at 145, to cover any of Plaintiffs' potential liability in the underlying suits caused in whole or in part by Enerfab, even if that liability is not vicarious liability resulting from Enerfab's actions.

### 2. Whether the Allegations Fall Within the Scope of the Policy

Now that the Court has addressed the scope of the policy, the Court proceeds to the second step of the framework laid out in *Fortney & Weygandt*.  2012 WL 13020177 at *5.  Here,

10

(5:19-CV-2413)

the Court assesses whether the allegations in the underlying lawsuits seek to hold Plaintiffs liable

for damage caused "in whole or in part" by Enerfab. The Court finds that the allegations in the

underlying lawsuits at least "arguably" do fall within the scope of what Defendant insured

Plaintiffs against (*see City of Willoughby Hills*, 459 N.E.2d at 558), because the underlying

plaintiffs seek to hold Plaintiffs responsible for harm that was caused in part by Enerfab.

Defendant therefore owes Plaintiff a duty to defend in the underlying lawsuits.

As discussed above, *Mafco* is a similar case that turned on the fact that the underlying

lawsuits in that case pleaded *solely* direct negligence claims against the additional insured. *F &

M Mafco*, 2009 WL 10688947 at *4. The *Mafco* court specifically noted:

> The sole claim [in the underlying lawsuit] is a negligent supervision claim
> asserted against [the additional insured] and describes wrongdoing engaged in
> solely by [the additional insured]. The complaint makes no allegation that
> suggests that [the additional insured's] liability arises in whole or in part as a
> result of [the named insured's] actions.

*Id.* The allegations in the underlying lawsuits in the instant case differ from those at issue in

*Mafco*. All of the underlying lawsuits in this case contain the following allegations:

> 7.    At all relevant times, Defendant FirstEnergy Corporation was acting by
> and through its agents, servants, and/or employees, who were acting within
> the course and scope of their agency, service, and employment with
> FirstEnergy Corp. . . .
>
> 34.   During 2017, one or more of the Enerfab companies was under contract
> with one or more of the FirstEnergy Defendants to perform work and/or
> maintenance at the Mansfield Plant.
>
> 35.   At all relevant times, one or more of the FirstEnergy Defendants entrusted
> part(s) of their work to one or more of the Enerfab companies but retained
> control of a portion(s) of that work. . . .
>
> 51.   The injuries and damages to the estate and beneficiaries of John Gorchock
> were caused by the negligence of the agents, employees, and servants of
> the FirstEnergy Defendants generally and in the following respects.

11

(5:19-CV-2413)

*E.g.*, ECF No. 29-3 at PageID #: 537, 541, and 543.  These allegations make clear that the underlying plaintiffs are not seeking to hold Plaintiffs liable for harm caused *solely* by Plaintiffs, but also for harm "caused by the negligence of [Plaintiffs'] agents . . . and servants." *Id.* at PageID #: 543.  Paragraphs 34 and 35 suggest that one of Plaintiffs' alleged agents and/or servants was Enerfab, the named insured. *Id.* at PageID #: 541.  Contrary to the facts in *Mafco*, therefore, the complaints in the underlying cases here do make "allegation[s] that suggest[] that [the additional insured's] liability arises in whole or in part as a result of [the named insured's] actions." *F & M Mafco*, 2009 WL 10688947 at *4.

There are other indications that Enerfab caused, at least in part, the harm to the underlying plaintiffs.  Per the Service Contract between Plaintiffs and Enerfab, Enerfab was responsible for taking certain actions, and the underlying plaintiffs allege that the omissions of these actions caused their harm.  To take one example, the underlying plaintiffs allege that Plaintiffs were negligent in "[f]ailing to ensure the safety of the work performed at the Mansfield Plant." ECF No. 29-3 at PageID #: 546.  The Service Contract specifically required Enerfab to assume sole responsibility for its employees' safety.  ECF No. 32 at PageID #: 1068-87.  Given that Enerfab was under contract to ensure its employees' safety, and Plaintiffs are being sued in the underlying lawsuits for failing to ensure Enerfab's employees' safety, there is a clear argument that omissions by Enerfab partly caused the harm for which the underlying plaintiffs seek to hold Plaintiffs liable.

12

(5:19-CV-2413)

Another indication that Enerfab caused, at least in part, the harm to the underlying plaintiffs is that Enerfab received a Citation from the Occupational Safety and Health Administration ("OSHA") for "Serious" violations related to the facts giving rise to the underlying lawsuits.  ECF No. 39-1.  An example of one of these OSHA violations is Enerfab's failure to "implement procedures for rescuing employees inside the vault."  ECF No. 39-1 at PageID #: 1278.  The underlying plaintiffs accuse Plaintiffs of "[f]ailing to design and implement an escape and/or rescue plan for confined spaces at the Mansfield facility."  ECF No. 29-3 at PageID #: 544.  Given that OSHA has already held Enerfab responsible for the exact conduct that the underlying plaintiffs seek to hold Plaintiffs responsible for, the Court finds it difficult to conclude that Enerfab did not cause, at least in part, the underlying plaintiffs' harm.

Under Ohio law, that is sufficient to trigger Defendant's duty to defend Plaintiffs in the underlying lawsuits.  Again, if the underlying lawsuits "state a claim which is potentially or arguably within the policy coverage . . . the insurer must accept the defense of the claim."  *City of Willoughby Hills*, 459 N.E.2d at 558.  The policy covers Plaintiffs for liability caused in whole or in part by Enerfab.  It is at least arguable—indeed, probable—that Enerfab caused, in part, the harm to the underlying plaintiffs for which Plaintiffs face liability.  Thus, Defendant must defend Plaintiffs in the underlying lawsuits.

### IV. Conclusion

For the foregoing reasons, Defendant must defend Plaintiffs in the underlying lawsuits under either Ohio or Pennsylvania law, rendering a choice between the laws of the two states

13

(5:19-CV-2413)

unnecessary.  Plaintiffs' Motion for Partial Summary Judgment (ECF No. 33) is granted, and

Defendant's Cross-Motion for Summary Judgment (ECF No. 35) is denied.


       IT IS SO ORDERED.


    September 16, 2020                         */s/ Benita Y. Pearson*
Date                                           Benita Y. Pearson
                                              United States District Judge

14